ROBINSON (ALLIN v.). See Case No. 249.

ROBINSON (CARPENTER v.). See Case No. 2,431.

## Case No. 11,946.

### ROBINSON v. CATHCART.

[2 Cranch, C. C. 590.] [1]

Circuit Court, District of Columbia. June 4. 1825.

INJUNCTION — MOTION TO DISSOLVE — ANSWER — EQUITIES—VOLUNTARY CONVEYANCE—MISTAKE OF LAW—PENALTY—CONTRACTS.

1. Upon a motion to dissolve an injunction, an averment in the answer, not responsive to any allegation in the bill, is not per se evidence against the complainant.

2. An answer of the defendant, in order to be evidence in his favor, must be an answer to a fact averred in the bill, and not an answer to a mere inference of law.
[Cited in brief in Naglee's Estate, 52 Pa. St. 157.]

3. It is only between equal equities that the rule applies, "Prior in tempore, potior in jure."
[Cited in brief in McAlpin v. Henshaw, 6 Kan. 181.]

4. A voluntary conveyance is void as to subsequent purchasers for valuable consideration, even with notice.

5. When husband and wife are codefendants, service upon the husband alone is good service of the subpoena.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

6. An injunction till answer, will not be dissolved until all the defendants who are interested have answered.

7. The court may decree the specific execution of a contract to give collateral security.

[Cited in Gottschalk v. Stein (Md.) 13 Atl. 626.]

8. The answer of one defendant is not evidence for another.

9. A clause in a contract stating that, "in further confirmation of the said agreement, the parties bind themselves each to the other in the penal sum of $1000," is not to be considered as liquidating the damages for the breach of the agreement, but as a penalty superadded.

10. A motion to dissolve an injunction before final hearing, is not, technically speaking, set for hearing on bill and answer.

11. A cause is not set for hearing on bill and answer, until it is set for final hearing.

12. A mistake of the law, is not a ground of relief in equity, where no fraud is charged.

13. When a penalty is inserted in a contract, neither party has a right to avoid the contract by paying the penalty.

14. Any conveyance executed by a husband in favor of his wife or children, after marriage, which rests wholly on the moral duty of a husband and parent to provide for his wife and issue, is voluntary, and void against purchasers.

15. If there are several defendants, the court will not, in general, dissolve the injunction, till all have answered.

This was a bill in equity, filed by William Robinson against James Leander Cathcart and others, for the specific execution of a contract for the sale of a tract of land in Fairfax county, in Virginia, by the plaintiff to the defendant, J. L. Cathcart. The complainant filed a bill in this court, in Alexandria county, on the 12th of March, 1824, against the defendant, J. L. Cathcart, alleging that on the 10th of September, 1822, he entered into an agreement, under seal, with the said defendant, by which he agreed to sell to the defendant, his farm, called Howard, in Fairfax county, Virginia, for $8000, (referring to a deed of conveyance from Mr. Law to the complainant,) and containing 103 acres, as soon as a deed of conveyance with a proper relinquishment of dower, could be made; payable, $5000 on the 1st of January, 1825, and the balance in three annual instalments, from the 1st of January, 1825, with interest from that day; and that the defendant agreed to give his bonds accordingly, and a deed of trust upon the land, "and on the total amount of his claim on the United States, under the provisions of the 11th article of the treaty with Spain, to the said Robinson as further security for the payment of the said bonds, or purchase-money, as may be agreed by counsel, and effect insurance against fire; and in further confirmation of the said agreement, the parties bind themselves each to the other in the penal sum of $1000." That the said treaty with Spain was ratified finally in February, 1821. That shortly after the date of the said agreement the said defendant was put in full and quiet possession of the premises, and has ever since held the same in peaceable and uninterrupted possession. That the necessary deeds, &c., were prepared by the complainant's counsel, and offered to the defendant in June, 1823; but the defendant then objected to receiving and executing them, and still refuses to carry the contract into effect on his part. The complainant states that he is informed and believes that the defendant's chief, if not only, means of paying the purchase-money are to be derived from the claim under the treaty, and that the defendant is using all the means in his power to collect the said claim and so to dispose of it to his own use as that the complainant will be left without redress or the means of obtaining the purchase-money; wherefore he prays for a specific performance of the agreement, and that the defendant may be enjoined from proceeding to collect or receive the money arising from the claim; and for general relief.

On the 6th of July, 1824, the complainant filed another, or supplemental bill in this court, at Washington, reciting the substance of the former bill, and making that a part of this, and averring that the sale was made in consequence of the defendant's assurances that the Spanish claim should be assigned to the complainant as security for the purchase-money; "that in all the intercourse and negotiations with the said defendant and his wife, Jane Barker Cathcart, who was present and had knowledge of the said bargain and sale, neither he nor his wife intimated in the most remote manner, that any previous lien existed in favor of his said wife on the claim he had on the United States under the said treaty;" but the complainant is informed that the defendant pretends that he had previously assigned the claim to one John Woodside, the father of the defendant's wife, in trust for her use, who is charged with being privy to the arrangement made for the assignment of the claim to the complainant, but who never informed the complainant that he had such a deed, nor made any objection to the said claim being assigned to the complainant. And the complainant charges a combination between the defendant and wife and Woodside to defraud him of his lien on the said claim, by setting up the said deed of trust, which the complainant charges to be fraudulent and void; that they have called on the accounting officers of the treasury to audit and settle the claim, in order to obtain the amount thereof; and, more effectually to defraud the complainant, they have drawn an order in favor of R. Smith on the proper officer of the government, authorizing the payment of the full amount of the sum awarded to defendant under the Spanish treaty. The complainant prays an injunction to the said R. Smith, Cathcart and wife, Woodside, Richard Harrison, first auditor, Joseph Anderson, first comptroller, William H. Crawford, secretary of the treasury, T. T. Tucker, treasurer of the United States, &c. &c., which was

granted by one of the judges, on the 6th of July, 1824, in vacation.

These injunctions having been served on all but Mrs. Cathcart and the secretary of the treasury, the defendant J. L. Cathcart answered the bill, but did not deny its most material allegations. He states that he advertised in the National Intelligencer, his wish to purchase a small farm where he might establish a boarding academy. That the complainant informed him he had a place called Howard, which he believed would suit the views of this defendant, and represented that it was well calculated for such an establishment; that the defendant went to see the place, but the complainant not being there he could not take so full a view and examination, or know the extent and boundaries, as he wished. That the complainant afterwards, in conversation with this defendant, represented that certain land, (which he describes in his answer,) was part of the Howard place. That the place cost him, in money, more than $8,000, and that he held it at $10,000. That, confiding in these and divers other representations and statements made by the complainant, and believing, from such representations and statements, that the place was a healthy situation, the soil good, and that it would be in all respects suitable for an academy such as he informed the complainant it was his design to establish, and that the lands included within the bounds of the place, were such as had been pointed out and described (but does not say by whom); and that a plat was ready to be submitted to his inspection, and that the plantation was well worth the sum which the complainant demanded for it, he was induced to sign an agreement for the purchase of it. That at the time of executing the agreement he refused to insert $20,000, or any larger sum than $1,000, as the penalty, as it might be more for his interest to pay the penalty than to comply with the contract; and positively avers that $1,000 was inserted with a full belief on his part and with a knowledge of that belief on the part of the complainant, that he might either take the land or pay the said sum at his option. That the said representations and statements have proved utterly fallacious and deceptive. That the place is extremely unhealthy; that the representations as to the value are equally at variance with the truth; that the soil was poor and unproductive; that the complainant had offered it in exchange for property valued at $5,000; that a considerable part of the land which had been shown and represented (but he does not say by whom,) to this defendant as constituting part of the place, and which was inclosed within the same fence, and added essentially to its value and comfort, did not belong to it; all which matters he pleads in bar of the complainant's claim; and also that the complainant's only remedy is at law, for the penalty. He denies that the complainant tendered to him the papers marked 2, 3, 4, 5, and 6, or any other papers prepared in conformity with the articles of agreement; nor did he exhibit any plat of the premises, which he had engaged to do; nor did he put the defendant in possession of the premises; but the defendant was obliged to pay a large sum of money to the tenant to obtain possession He avers that the complainant has constantly declared that the property still belonged to him and not to the defendant, and thereby prevented the defendant from enjoying the premises in a full and ample manner. That the defendant tendered to the complainant a surrender of the premises, and payment of a lerger rent than he had received from his former tenant, which the complainant refused. He admits that he frankly stated to the complainant his situation as to pecuniary resources, and that his ability to pay would be wholly dependent upon the amount he should recover under the Spanish treaty. "To this claim, however, this defendant had long since relinquished his right by a conveyance thereof to Mr. John Woodside, as trustee for Jane Barker Cathcart, the wife of this defendant, dated the 10th of November, 1818, and recorded in the land records of Washington county, in the District of Columbia, in Liber A. R. No. 42, fol. 278, as by reference to the same, or by an exemplification thereof, which this defendant has ready to produce, will appear." He avers that the whole negotiation and contract with the complainant was made without the knowledge or consent of the said John Woodside, and without the assent of the said Jane B. Cathcart, but with the belief "that the sum to be awarded under the treaty would be at least $24,000, and that the purchase of the premises would be a judicious investment of part of the said sum, in which the said trustee and cestui que trust would concur. But they, finding that the premises did not correspond with the representations which the complainant had made to this defendant, and were not worth the money which had been contracted for as the price, utterly refuse to pay the same under any circumstances." The defendant further states that Mr. Woodside, as trustee, drew a draft dated 5th January, 1824, in favor of Richard Smith, cashier of the Branch Bank of the United States at Washington, payable out of the amount to be received under the Spanish treaty, to secure certain debts therein specified, which draft was given to and accepted by the said Richard Smith without any notice or limitation of any prior lien; and therefore vested in him a prior right in law and equity to the said proceeds; the whole sum awarded being only $6,900.27, from which a considerable sum has been deducted as due to the United States; and "that, as the complainant knew that this constituted the only source from which payment could be made, he made the contract subject to this contingency."

Mr. Woodside, in his answer, avers that he

was in no degree party or privy to the allegations and averments of the bill in regard to the contract of the other defendant, J. L. Cathcart, and that he has no knowledge further than from the representations of the said Cathcart and the complainant. He relies upon the deed of trust to him in 1818; says that he has no personal interest in the property; and was never consulted by Mr. Cathcart, in reference to the negotiation with the complainant, and never assented to any appropriation of any of the trust funds towards, or for the purchase of any property from the complainant. None of the other defendants had answered the bill, and the defendants, Cathcart and Woodside, moved for dissolution of the injunction.

R. S. Coxe, for defendant, contended that the plaintiff had a remedy at law upon the contract, and therefore could not have relief in equity. That the Spanish fund had been transferred to Mr. Woodside, in 1818, and the order in favor of Mr. Smith was given in January, 1824, before the injunction was obtained. That a court of equity never enforces an agreement to give collateral security; and will not decree specific execution of a contract to convey the wife's property; nor what is impossible to be performed; nor where a performance would be a breach of trust; nor where a contract is unreasonable; and that all applications for specific execution, are to the discretion of the court; and if not equitable, the court will leave the party to his remedy at law. That upon the contract itself he had a right to abandon it upon payment of the $1,000. That this court cannot enjoin an officer of the treasury. Ortread v. Round, 2 Eq. Cas. Abr. 145; Gilb. Lex P. 245; Emery v. Wase, 8 Ves. 505; 1 Madd. Ch. Prac. 325, 328, 366; Newl. Cont. 213, 218, 223; Tayloe v. Sandiford, 7 Wheat. [20 U. S.] 13.

Mr. Jones, contra.

The bill in Alexandria was taken for confessed, and there is a decree nisi upon it. The bill here is only ancillary to that. The answer does not deny the allegations of the bill, but sets up an independent defence, which must be proved aliunde. The penalty is no bar to a specific execution. No parol agreement can be set up against a contract under seal; nor can parol evidence be admitted to show that the contract was different from that which is reduced to writing, and sealed by the parties. All the correspondence shows that the Spanish fund was relied upon by both parties. It shows, also, that his complaint about the forty acres not being included, is false. The supplemental bill states that Mrs. Cathcart was present, privy, and assenting to the contract, which is not denied by her husband's answer, or by that of Mr. Woodside. The deed to Mr. Woodside is a mere voluntary assignment of a chose in action, for the benefit of his wife, with-

out any consideration whatever. The moment it goes into the hands of the wife, it becomes again the property of the husband. In 1818 there was no treaty with Spain for the payment of this claim. It was a mere possibility, and not the subject of conveyance or assignment. It is, at most, an equitable, not a legal right. But after the treaty, it became a new property, and was, in equity, assigned to the complainant. Even if it had been real estate, a mere voluntary conveyance would, in equity, be postponed to a bonâ fide purchaser for valuable consideration, whether with or without notice. The order in favor of Mr. Smith was only to receive the money for the use of Mr. Cathcart; at least, there is no evidence to the contrary. Mistake, fraud, or trust, are the only matters that can be proved by parol, in contradiction to a deed, even by a defendant in a bill for specific performance. In Wheaton's case,— Sexton v. Wheaton, 8 Wheat. [21 U. S.] 239, —there was no agreement to convey or assign; nothing but an expression in his letter in which he calls the house his own, when it was his wife's. A married woman is bound by her fraud; and will also be bound if she stands by and sees her husband dispose of her property, without objection. 8 Wheat. [21 U. S.] 239. If this were a final hearing, the court could not, upon this evidence, decree in favor of the defendant.

Mr. Key, in reply.

This is a new, not a supplemental bill. We might have had one of them dismissed. The deed, in 1818, contained, besides the assignment of the Spanish claim, household furniture; and, in order to make the deed valid, without parting with the possession, it was recorded according to the act of Maryland against secret sales. The smallness of the penalty is evidence that it was intended as liquidated damages. The plaintiff comes into equity for a specific execution; he must show that he has a fair, legal, and honest claim. All the averments in the answer, showing that it is unconscientious in the complainant to enforce the contract, are averments responsive to the bill. The allegation, that the plaintiff has a right to specific execution, makes those averments evidence for the defendant. Parol evidence may be admitted to show that a material part of the agreement has been omitted, by mistake. The word "penalty" is immaterial. The intention of the parties must decide whether it be a penalty, or liquidated damages. If it be doubtful, or if the omission be by fraud or mistake, parol evidence is admissible. Mechanics' Bank of Alexandria v. Bank of Columbia, 5 Wheat. [18 U. S.] 326; Union Bank v. Hyde, 6 Wheat. [19 U. S.] 572; Ross v. Norvell, 1 Wash. [Va.] 15; Rob. Frauds, 82; 1 Madd. Ch. Prac. 405, 406, 321, 322. The averment that the agreement was, that the parties might abandon, on payment of the penalty, is responsive to the al-

legations of the bill. Mr. Robinson can only be considered as a subsequent creditor, not a subsequent purchaser. Sexton v. Wheaton, 8 Wheat. [21 U. S.] 239. The case of Mrs. Wheaton is much stronger against her than this is against Mrs. Cathcart. Even if she was present, and knew of her husband's offer of this fund, as security, and did not disclose her interest, she cannot be bound. She is no party to this suit; the subpœna against her is returned non est, and she has not appeared.

Before CRANCH, Chief Judge, and MORSELL and THRUSTON, Circuit Judges.

CRANCH, Chief Judge (after stating the substance of the bill and answers). The defendants, Cathcart and Woodside, now move for a dissolution of the injunction. The only important averment of the bill which is denied by either of the answers, is that which charges that the defendant Woodside was privy to the arrangement made for the assignment to the complainant of the Spanish claim. It is very doubtful whether the alleged misrepresentations, previous to the conclusion of the contract, can be given in evidence at all, in this case, no fraud being charged. Irnham v. Child, 1 Brown, Ch. 92. But, admitting that they may, their averment in the answer, not being responsive to any allegation of the bill, is not, per se, evidence against the complainant. They constitute an independent defence, (if they be a defence,) consistent with all the allegations of the bill. The answer of a defendant, in order to be evidence in his favor, must be an answer to a fact averred in the bill, and not an answer to a mere inference of law. The claim of a right to a decree for specific performance is not such an averment as will make the defendant's allegation of new justificatory facts (not repugnant to the averment of facts in the bill) evidence for the defendant.

Laying aside, then, all the allegations in the answers which are not responsive to the averments in the bill, the principal question is, whether, exclusive of the averment of Mr. Woodside's privity in the arrangements of Mrs. Cathcart for the assignment of his Spanish claim, there be equity enough left in the bill to support the injunction till final hearing. Upon this question it is material to inquire whether the equity of Mrs. Cathcart, whose interest is set up as a bar to the relief sought by the complainant, be equal to that of the complainant; for it is only between equal equities that the rule applies, "prior in tempore, potior in jure." The deed of trust to Mr. Woodside is a mere voluntary assignment, without any consideration averred, excepting the existence of two prior assignments, equally voluntary, and made directly from the husband to the wife. See 1 Madd. Ch. Prac. 216, &c. A voluntary conveyance is void as to subsequent purchasers

for valuable consideration, even with notice. See, also, Sugd. 434, 439; Leach v. Dean, 1 Ch. R. 146; Parry v. Carwarden, 2 Dickens, 544; Powel v. Pleydell, 18 Vin. Abr. D. pl. 5. And, as it is not provided in the deed that the property should be free from the control of the husband, it seems probable, that, as soon as any part of the money came to the hands of the wife, it would be vested absolutely in the husband. But the complainant stands in the position of a subsequent purchaser, for valuable consideration, without notice. Bath & Montague's Case, 3 Ch. Cas. 123. It is evident that the Spanish fund entered into all the considerations of the complainant and Mr. Cathcart, from the very commencement of the negotiation to its consummation. The complainant would not have contracted with the defendant but for that fund; and it is evident, both from the bill and answer, that he must depend upon that fund to reap the benefit of his contract. These circumstances, in my opinion, place him on higher equitable ground than that on which Mrs. Cathcart stands, even without supposing her to have been present at the bargain, and not objecting, or mentioning her claim, as averred in the bill and not denied in the answer. Sugd. Vend. 434, 439, 477, 480, 482; Sexton v. Wheaton, 8 Wheat. [21 U. S.] 239. If the subpœna had been served upon Mrs. Cathcart, I should have thought that her answer would have been indispensable before the injunction could be dissolved. Service upon the husband alone is good service of the subpœna when husband and wife are codefendants (Eden, Inj. 52; Pulteney v. Shelton, 5 Ves. 147, corrected by the errata; and the court will not dissolve an injunction until all the defendants have answered; Eden, Inj. 89), and as Mrs. Cathcart's trustee and her husband are made parties, and have been summoned, and as there can be little doubt that she has knowledge of this bill, and might have appeared and answered if she would, I am still strongly inclined to think that that circumstance is a sufficient ground to refuse a dissolution of the injunction at this time.

But it is contended that the court cannot decree specific execution of a contract to give collateral security. I know of no decision to that effect. None such has been cited. 2 Com. Dig. "Chancery," 2, C, 16; Buxton v. Lister, 3 Atk. 383; 2 Com. Dig. 340, 2 C, 1. As to the claim of Mr. Smith, it may be observed, that the answer of one defendant is not evidence for another. It is a sufficient answer to this claim, that Mr. Smith has not answered the bill, and therefore the injunction cannot be dissolved in his favor; and, as Mr. Woodside admits, in his answer, that he had drawn a bill in favor of Mr. Smith for the whole amount of the fund, it cannot be dissolved in favor of Mr. Woodside; and no one will contend that Mr. Cathcart is entitled to receive the fund in violation of his contract with the com-

plainant, his assignment to Mr. Woodside, and the bill in favor of Mr. Smith. It is said, also, that the court cannot decree a specific performance of a contract by the husband to convey the property of his wife. But it is yet to be determined whether this is the wife's property, as against this purchaser for valuable consideration. A like answer may be given to the objection, that the court will not decree a performance which would be a breach of trust. It is yet to be determined whether the trust is not void as against this complainant.

I give no opinion as to the objection that the bill in Alexandria is taken for confessed; as it seems to be admitted that it was intended to file an answer in that case; and as this really involves the whole question there.

I do not think that the agreement itself will bear the construction, that "the penal sum of $1000," is to be considered as liquidated damages. Howard v. Hopkyns. 2 Atk. 371. There is no case in which such a construction has been given to such an instrument; and the averment that such was the understanding of the parties, if allowed to be a defence, must be proved by other evidence than the answer of the defendant. Upon the whole, I think the injunction ought to be continued until final hearing. I give no opinion as to the effect of the injunction upon the officers of the treasury department; if they choose to respect it, very well; if they do not, it will be then time enough to question the power of this court to enforce it.

THRUSTON, Circuit Judge, did not concur; and MORSELL, Circuit Judge, not having heard the argument, gave no opinion. The effect of this division of opinion was, that the injunction could not then be dissolved, and the cause was continued to the next term.

After the foregoing opinion was delivered, Mr. Coxe, the defendant's counsel, suggested a doubt whether the ground taken in that opinion was correct, viz.: That the answer is to be considered as evidence for the defendant, so far only as it is responsive to some allegation in the bill; Mr. Coxe seeming to be of opinion that the answer is to be taken as true in every particular, in the same manner as if the cause were set for final hearing upon bill and answer; and in support of his view of the case, he cited Barret v. Blagrave, 6 Ves. 104; Hanson v. Gardiner, 7 Ves. 305; Gourlay v. Duke of Somerset, 1 Ves. & B. 68; Bishton v. Birch, Id. 366, and 2 Ves. & B. 40. 44; Kimpton v. Eve, 2 Ves. & B. 349; Couch v. President & Directors of Ulster & Orange Turnpike Co., 4 Johns. Ch. 26.

In answer to this suggestion, CRANCH, Chief Judge, submitted to the counsel for the parties, in vacation, the following opinion:

When the plaintiff has replied to the answer, and the cause is at issue, I presume it will not be denied that the answer is evidence for the defendant. so far only as it is responsive to some allegation in the bill. If this position be denied, I refer to Beckwith v. Butler, 1 Wash. (Va.) 225; Hoomes v. Smock, 1 Wash. (Va.) 389; Chapman v. Turner, 1 Call, 286, 288; Maupin v. Whiting, 1 Call, 224, 226; Pryor v. Adams, Id. 382, 394; Bullock v. Goodall, 3 Call, 44; Auditor v. Johnson, 1 Hen. & M. 537, 542; Dangerfield v. Claiborne, 2 Hen. & M. 17; Page v. Winston, 2 Munf. 298; Scott v. Gibbon, 5 Munf. 86; Thompson v. Strode, 2 Hen. & M. 19; Leeds v. Marine Ins. Co., 2 Wheat. [15 U. S.] 383; Young v. Grundy, 6 Cranch [10 U. S.] 51; Hart v. Ten Eyck, 2 Johns. Ch. 87; Ringgold v. Ringgold, 1 Har. & G. 28. I do not remember that I ever heard this point controverted, and I am sure that it has been considered by this court as completely settled for more than twenty years.

The only reason why the answer of the defendant is considered as evidence in his favor, is, that the plaintiff has called upon him to answer as a witness, and is therefore bound to admit his answer, so far as he has called for it, to be prima facie true, and as worthy of credit as the testimony of any other witness. But when the defendant, in his answer, avers a fact respecting which the plaintiff has not required his answer, there is nothing to make that averment evidence for the defendant; and it stands on the same ground as the averment of a defendant at law in the ordinary course of pleading, and must be sustained by evidence aliunde. The case is different when the cause is set for hearing on bill and answer, without a replication. It is stated in Cursus Cancellariæ, 149, that "when the plaintiff finds sufficient matter confessed in the defendant's answer whereon to ground an order or decree, he may proceed to a hearing upon the bill and answer," "and in such cases the answer is to be admitted true, in all points as to the particulars charged in the bill; and no other evidence is to be read than what arises from the answer itself." And in Harrison, Ch. Prac. 601, it is said, "The method of hearing a cause. upon bill and answer, is generally thus: After the substance of the bill has been opened by the junior counsel, and the matter of equity thereof duly represented to the court, the answer of the defendant is to be stated in the same manner by his counsel, and must be admitted as true in all points as to the particulars charged in the bill, and no other evidence is to be given than what arises from the answer itself, or being matter of record to which the answer refers, and which is provable by the record. But note; in many instances, though the cause requires no witness, yet it may be necessary for the plaintiff to reply, &c., whereby the defendant will be put upon proof of his answer, and the plaintiff admitted to prove the matters of the bill." Although these authorities seem to show that the answer is to be taken as true only in regard to "the particulars charged in the bill." yet I apprehend the rule to be, that when the plaintiff sets the cause for hearing upon bill and answer, with-

out a replication, which he always has a right to do, the answer must be taken to be true in all its allegations, whether they be or be not responsive to the allegations of the bill; and the reason is, because the plaintiff, by setting the cause for hearing on the bill and answer, has deprived the defendant of the power of proving them by evidence aliunde. The setting the cause for hearing on the bill and answer is the plaintiff's own voluntary act, and the defendant has no right to ask for a commission to examine witnesses, nor to produce any evidence whatever, other than his own answer. He cannot object to the trial of his cause upon his own representation of it. But upon a motion to dissolve an injunction, the case is different. It is a motion made by the defendant against an unwilling plaintiff. The motion must be heard whether the plaintiff consent or not. He has done nothing to prevent the defendant from proving his case by the ordinary modes of proof. He has not waived his right to reply to the answer, and to put the defendant to his proof. He has either replied, or may reply; and his not having replied, at the time the motion is made, is not an admission of the truth of the answer. The motion is generally made upon filing the answer, and before the plaintiff has had time to consult counsel, whether to except or to reply. It has been the uniform practice of this court to refuse to dissolve the injunction, unless the answer deny fully and explicitly all the equity of the bill, although no exceptions are taken to the answer. In Young v. Grundy, 6 Cranch [10 U. S.] 51, the supreme court of the United States said, "If an answer in chancery neither admits nor denies the allegations of the bill, they must be proved on the final hearing; but upon the question of dissolution of an injunction, they are to be taken as true." I imagine, therefore, that the plaintiff was not bound to decide whether he would, or would not, reply upon the hearing of the motion to dissolve. But in this case, before the argument upon the motion to dissolve was concluded, I recollect hearing Mr. Jones direct the clerk to enter a general replication to the answers. This, however, I did not deem important at that time, for I then supposed, and still suppose, that while the plaintiff has the right to reply, the answer, so far as its character and effect as evidence is concerned, must be regarded in the same manner as if the replication had been filed. If not, the injunction might be dissolved on motion, and reinstated upon final hearing, upon the same evidence. For it may happen that upon the final hearing, the defendant may not be able to bring any evidence in support of the new and irresponsive allegations set up in his answer, and upon the strength of which the injunction was dissolved; and the whole equity of the plaintiff's bill may, as in the present case, stand admitted by the answer. In the mean time, however, irreparable injury may have been done by dissolving the injunction. The

safest course, therefore, is that which this court has always pursued ever since its establishment in 1801, to wit, to consider the answer as evidence only so far as it is responsive to the allegations of the bill, unless upon final hearing on bill and answer.

Before I proceed to notice the cases cited in support of the doctrine, that upon the motion to dissolve an injunction, the answer must be considered as true in every particular, I would observe that there seems to be a difference, in practice, between the courts of chancery, in England, and the courts of Maryland and Virginia, whose practice this court adopted as it found it, when this court was first established. In England, in general, injunctions are not granted until the time for appearing, or answering, which is very short, has expired, and the defendant has failed to appear, or to answer, when, if an injunction has been prayed by the bill, and affidavit made, it is issued, of course, until answer. Upon the coming in of the answer, the injunction is dissolved, of course, by its own limitation, unless the plaintiff having had notice, show cause for continuing it. Eden, Inj. 55, 57, 59. "Though an injunction" (in England) "will not be granted before answer, on the sole ground that the plaintiff" (at law) "will otherwise be entitled to sue out execution before the common injunction can be obtained, yet special injunctions to restrain proceedings at law, will sometimes be granted, where the plaintiff has had no opportunity of obtaining the common injunction." Franklyn v. Thomas, 3 Mer. 225. As in the case of Annesley v. Rookes, 3 Mer. 226, note, where upon affidavit of facts, "it being the vacation and no subpœna returnable until the next term, Lord Eldon granted the injunction; the plaintiff undertaking to serve the defendant with immediate notice, and with liberty to the defendant to apply during the continuance of the sittings." Eden, Inj. 64. "The injunction, issued for the default of the defendant in not appearing or answering, is called the common injunction." Eden, Inj. 68. A special injunction is generally granted, until answer or further order. Eden, Inj. 325. "A special injunction is usually obtained, upon motion, on certificate of bill filed and affidavit filed verifying the material circumstances. But in the vacation, when the court does not sit, and no motion can consequently be made, a judge of a court of equity will grant an injunction upon petition, with affidavit, and certificate of bill filed." Eden, Inj. 320. No bond or security are required. "If it be granted before answer, 'tis commonly till answer and further order." Eden says "or" further order. "Where an injunction is so granted, then, after answer has come in, if the counsel of the defendant allege that the defendant has answered and denied the whole equity of the plaintiff's bill, (his contempts, if any, being cleared and his appearance entered,) and also produce a certificate from the six clerks that the answer has been filed fourteen days at

least, the court will, on such counsel's motion, order the injunction to stand dissolved at a short day, nisi causa, &c.; and perhaps without such certificate. If, at the day, no cause be shown, then, upon affidavit of due service of the order, and on motion, the order will be made absolute." Pr. Reg. Ch. 198, 199. But here, according to the practice of Virginia and Maryland, as adopted in this court, injunctions are generally granted by a judge in vacation, and are to continue until the further order of the court. If they are to stay judgments at law, bond and security are required. Upon filing his answer the defendant gives notice of his motion to dissolve; and he must support his motion by showing that he has answered all the equity of the bill. Upon the motion to dissolve, all the allegations of the bill, not denied by the answer, are to be considered as true. Young v. Grundy, 6 Cranch [10 U. S.] 51. But it is contended, that in England, upon the motion to dissolve, or rather, upon the rule to show cause, the answer is to be considered as true in every particular. No case is cited in which that point has been decided; but cases are cited which, it is said, seem to take the principle for granted, by deciding the question of dissolution upon facts, stated in the answer, which are not responsive to any allegation of the bill. Admitting that to be the fact, that is, that in those cases the court dissolved the injunction upon irresponsive facts set up in the answer, no objection having been made upon that ground, I do not think the cases ought to be considered as overruling the general principles which I have adduced in support of the contrary doctrine.

Let us now, however, examine those cases. The first is Barret v. Blagrave, 6 Ves. 104. The marginal note of the case is, "The injunction obtained upon a breach of covenant, in nature of a specific performance, dissolved upon the answer, contradicting the affidavits, and showing consent for several years." The injunction had been granted upon default of appearance, and upon affidavits stating that the defendant held under a lease from the proprietors of Vauxhall Gardens, by which the tenant had covenanted not to carry on the trade of victualler, retailer of wine, &c., or any employment that would be to the damage of those proprietors; upon penalty of forfeiture of the lease, and payment of £50 a month to the lessors. That the defendant kept a house of public entertainment where all sorts of refreshments and liquors were supplied, so as very materially to interfere with Vauxhall Gardens; above one hundred persons in a night having quitted the gardens and gone to this house for refreshment and returned to the gardens afterward. The answer denied, that the defendant kept such a house as contemplated by the covenant in the lease; that it was fitted up to accommodate persons coming from Vauxhall; that he retailed liquors; and that any persons resort to the house from the public gardens for refreshment and return afterwards. It averred that the defendant kept the same kind of house, with the knowledge of the lessors, before and at the time the lease was signed; and before the execution of the lease the agent of the lessors signed a momorandum consenting that this trade should not be considered a breach of the covenant, and stating that the tenant's mode of using the house was not injurious to the proprietors of the gardens nor contrary to the lease; that the defendant continued to carry on the business in the same way from that time to the date of the injunction, (11 years,) without objection. That the persons resorting to the house consist of hackney-coachmen, mechanics, &c., and the business is confined to the sale of meat, as a cook's shop. It will be perceived at once that the answer denies all the facts raising the equity upon which the injunction was granted; and upon that ground the injunction was rightly dissolved. It is true that the chancellor said that the case made out by the plaintiff's affidavits, upon which the injunction was granted, was within the terms of the covenant, and stated the long acquiescence of the plaintiff as a reason for refusing to decree a specific performance of the covenant, although that acquiescence was a fact stated in the answer, and was not perhaps strictly responsive to any allegation of the bill; but not having the bill before us we cannot say whether it was responsive or not. As there was, without that fact, sufficient ground for dissolving the injunction, it is not probable that the chancellor ever considered whether it was or was not responsive to the allegations of the bill.

The next case cited, is Hanson v. Gardiner, 7 Ves. 305. This was "an injunction against cutting; and pasturing cattle in a wood; the plaintiff praying the injunction as tenant in fee; or as lord of the manor inclosing under the statute; the defendants denying the former title; and as to the latter claiming common of pasture and estovers; and stating that after the inclosure, sufficient common of pasture would be left." Here it will be observed that the title in fee, set up by the plaintiff, is expressly denied by the answer. The other title, that is, as lord of the manor inclosing under the statute of Merton, could be claimed only by an averment that the plaintiff had left the tenants sufficient common of pasture and estovers. The denial, therefore, of the defendants, in their answer, that the plaintiff had not left them sufficient common of pasture was the direct denial of an allegation which was, or ought to have been in the bill, so that the whole equity of the bill was denied by the answer; and the injunction must have been dissolved without recurring to other facts stated in the answer which were not strictly responsive to any allegation of the bill; and if the chancellor, in giving his opinion, referred to those facts, without regard to the question of their responsiveness, it affords but a weak argument

in support of the doctrine, that upon a motion to dissolve an injunction, the answer is to be considered as true in every particular.

The next case is that of Gourlay v. Duke of Somerset, 1 Ves. & B. 68. In this case the plaintiff, who had been in possession of the land three years under the defendant's written agreement, sought a specific performance of the agreement, and an injunction to restrain the defendant from proceeding at law, in ejectment. The defendant, in his answer, admitted the agreement, but alleged specific instances of improper cultivation of the farm, and waste by the plaintiff; and the plaintiff's refusal of the lease, when tendered by the defendant, the plaintiff saying he considered the agreement sufficient for him. The chancellor continued the injunction upon the plaintiff's agreeing to deliver possession when required by the court, and paying the rent due, notwithstanding the facts thus set up in the answer; which seem to have been admitted as true both in the argument of counsel, and in the opinion of the court; no objection having been made on the ground of their not being responsive to the bill. And upon the want of that objection rests the weight of the argument to be drawn from that case. The cause was argued by able counsel on the part of the plaintiff, and their failing to object to the answer as evidence of those facts affords strong ground to believe that such an objection would not have been sustained. But it is not a decision upon the point; the chancellor did not dissolve the injunction upon those facts; and, at most, it only shows that such facts may be taken into consideration by the chancellor, in a question to his discretion, which a prayer for specific performance always is, but not in every question of dissolution of an injunction.

The next case cited is Bishton v. Birch, 1 Ves. & B. 366. An injunction to stay proceedings at law had been obtained for want of an answer; and the plaintiff, on affidavits, moved to extend the injunction to stay trial at law. This was objected to, on the ground that the answer was just filed at the time of hearing the motion. Before the motion was decided the plaintiff filed exceptions to the answer, and the defendant submitted to make a better answer. The chancellor being of opinion that an insufficient answer is no answer, extended the injunction to stay the trial. I do not see what bearing this case has upon the present question. The most, that can be inferred from it, is, that if the answer had been good the chancellor would not have extended the injunction to stay trial.

The next case cited is Bishton v. Birch, again, in 2 Ves. & B. 40, 44. The points decided in the case are, 1st, that an injunction to stay proceedings at law, is dissolved upon the master's report that the answer is sufficient, (the plaintiff having filed exceptions to the answer, by way of showing cause why the injunction should not be dissolved,) and the order for dissolving the injunction is not suspended by the plaintiff's filing exceptions to the master's report. And 2d, that the order extending the injunction to stay trial at law, falls with the original injunction, and the plaintiff cannot, afterwards, show cause on the merits. The reason stated is, that when the plaintiff shows exceptions for cause, he comes under the obligation to procure the master's report of insufficiency in four days. I do not see how this case bears upon the argument, or how it tends to show that upon the motion to dissolve, the answer is to be taken to be true in every particular.

The next case cited is Kimpton v. Eve, 2 Ves. & B. 349. The bill stated a lease. The answer denied the existence of the lease, and stated that the pretended lease, which was made under a power, was void. This answer seems to be responsive to the bill, and as the injunction was dissolved upon that allegation, the case furnishes no argument upon the present question.

The last case cited is that of Couch v. President & Directors of Ulster & Orange T. Co., 4 Johns. Ch. 26. In that case the question was not made whether the facts stated in the answer were responsive to the allegations of the bill. That point seems to have been taken for granted; and it is evident that the material allegations of the bill upon which the plaintiff's equity was founded, were denied by the answer. The bill stated that the commissioners of the road had so long delayed to make the assessment, that the time given, by the charter, to the plaintiffs to make their proportion of the road instead of paying their assessment in money, had expired, and that they were thereby deprived of the advantage intended to have been secured to them, by the second section of the charter; and upon that ground, principally, prayed for an injunction to prevent the company from proceeding to sell the plaintiff's lands for their default in not paying the assessment in money. The answer stated that the assessment was made on the 8th of April, 1818, of which due notice was given, and that the plaintiffs had full time and opportunity to avail themselves of the benefit of the charter. This was a direct denial of the equity of the bill, and upon that ground, connected with a construction of the charter differing from the construction contended for in the bill, the injunction was dissolved. I do not, therefore, consider that case, as in any manner supporting the doctrine, that upon a motion to dissolve an injunction, the answer is to be taken as true in every particular, whether responsive, or not, to the allegations of the bill. And that this was not the opinion of the chancellor in that case, is evident from what he says in the same book, p. 497, in the case of Minturn v. Seymour, where he lays down the general principle, that "where a defendant, in answer to an injunction bill, admits the equity of the bill, but sets up new matter of defence on which he relies, the injunction will be continued to the hearing,"

and refers to the case of Allen v. Crobcroft, Barnard. 373, for the general rule to that effect.

The result of these authorities cited by Mr. Coxe, is that in two or three cases, where no objection was made to it, the court did, upon motion to dissolve, take into consideration circumstances stated in the answer which do not appear to have been responsive to the bill. But it does not appear to me that the argument to be drawn from those cases, is sufficient to overthrow the general principles upon which I conceive the opposite doctrine to be founded. But it is said that upon a motion to dissolve an injunction, the cause is always heard on bill and answer. This, certainly, must be a mistake. When a cause is said to be "heard on bill and answer," the expression is always technical, and understood technically to mean the final hearing when the cause has been set for hearing by the plaintiff, or by consent of the parties upon bill and answer alone without replication. But upon a motion to dissolve an injunction, the cause is not heard; the motion only is heard, the cause is not set for hearing, and the doctrine that the answer must be considered as true in every particular, applies only to a cause set for hearing on bill and answer.

Upon the whole, I still think that the position, which I took in giving my opinion upon the motion to dissolve the injunction, was correct; namely, that the answer is evidence of such facts only as are responsive to the allegations of the bill. See also Skinner v. White, 17 Johns. 366, 367. Having been of that opinion, it was unnecessary to consider what effect the new facts set up in the answer, if true, would have upon the question of dissolution; but as the correctness of that opinion is questioned, it may be well now to go into that consideration. The answer avers misrepresentations on the part of the plaintiff; namely, 1. That the plaintiff informed the defendant that he believed that his place called "Howard," would suit the views of the defendant. 2. That the plaintiff represented that it was well calculated for such an establishment as the defendant had described in his advertisement. 3. That certain land (which the defendant describes) was part of the Howard place. 4. That the Howard place cost him more than $8,000, and that he held it at $10,000. These representations and statements the defendant avers, "have proved utterly fallacious and deceptive." but he does not aver them to be false; nor to have been fraudulently made; nor to have been made with a knowledge that they were not true; nor do the representations seem to be material; except that, respecting the land supposed to be included in the Howard place; with regard to which the defendant avers, "that a considerable part of the land which had been shown and represented to him," (but does not say by whom) "as constituting part of the place, and which was inclosed within the same fence, and added essentially

to its value and comfort, did not belong to it." The averment is very loosely made, and as no fraud is alleged I should not think it a sufficient ground to refuse to decree a specific performance of the contract. These are the only misrepresentations, on the part of the plaintiff, averred in the answer.

The answer avers that the place is extremely unhealthy. That the representations as to the value are equally at variance with the truth. That the soil was poor and unproductive, and that the plaintiff had offered it in exchange for property valued at $5,000. But it does not aver that the plaintiff made any representations as to the healthiness, or the value, or the quality of the land. These averments, therefore, are quite immaterial. There are several other immaterial averments, in the answer, which were not insisted upon in the argument, and which I omit to notice; such as, that the plaintiff did not exhibit a plat; that the defendant had to pay money to the tenant in order to obtain possession; that the plaintiff has constantly declared that the property still belonged to him; that the defendant offered to surrender the premises and to pay a rent, &c. &c. But there is an averment, which, as it was relied upon by the defendant's counsel, may be properly noticed, if any of the irresponsive averments can now be considered. The defendant, Mr. Cathcart, avers that the penalty of $1,000 was inserted, with a full belief on his part, and with a knowledge of that belief on the part of the plaintiff, that he might either take the land, or pay the penalty. It is not, however, averred that he was led into the belief by the plaintiff, nor that he entertained that belief at the time of executing the contract; nor does he aver a tender of the penalty; nor does he, in his answer, offer to pay the penalty. He intimates that the reason why he would not agree to a larger penalty than $1,000, was, that it might be more for his benefit to pay the penalty than to comply with the contract; but he does not aver that he ever gave such a reason to the plaintiff; nor does he aver any fraud on the part of the plaintiff. If this comes under the head of mistake, it must be a mistake of the law. He did not understand the legal import of the instrument which he signed. But this is not a ground of relief in equity, where no fraud is charged. See Irnham v. Child, 1 Brown. Ch. 92, and Howard v. Hopkyns, 2 Atk. 371, in which case there was a proviso in the agreement "that if either side should break the agreement, he should pay £100 to the other." The defendant contended "that it was the intention of the plaintiff and defendant that upon either paying £100 the agreement should be absolutely void." The lord chancellor said, "As to the defence of a stipulated sum, I cannot take this to let off either party when they please, but to be no more than the common case of a penalty; for it might be inserted by the plaintiff in order to be paid for his trouble in viewing and measuring the

estate, taking plans, &c., supposing the defendant would be able to make out a title." "In all cases where penalties are inserted in case of a non-performance, this has never been held to release the parties from their agreement, but they must perform it notwithstanding." See. also, Hopson v. Trevor, 1 Strange, 533; s. c., 2 P. Wms. 191; Parks v. Wilson, 10 Mod. 515; Lennon v. Napper, 2 Schoales & L. 648; Magrane v. Archbold, 1 Dow. 107; Telfair v. Telfair, 2 Desaus. Eq. 271; Sugd. Vend. (2d Am. Ed., Phila., 1820) 163. 1 Fonb. p. 108, says, "As to ignorance of law, it may be laid down as a general proposition, that it shall not affect agreements, nor excuse from the consequences of particular acts, even in courts of equity." Eden, Inj. pp. 9, 10, says. "There are numerous cases in which the court has refused to interfere, where an instrument has been executed, or a sum of money paid, under an erroneous notion of the law." Mildmay v. Hungerford, 2 Vern. 243; Harman v. Cam, 4 Vin. Abr. 387; Wildey v. Coopers Company, 3 P. Wms. 127, note; Atwood v. Lamprey. Id.; Lord Irnham v. Child, 1 Brown, Ch. 92; Langstaffe v. Fenwick, 10 Ves. 406; Currie v. Goold, 2 Madd. 163.

We may now, therefore, consider the maxim, "Ignorantia juris non excusat," as fully recognized in equity, as it has been unquestionably established, in civil cases, at law. In a note he cites Dig. 22, tit. 6, and Cod. 1, 18, "De juris et facti ignorantia;" and Code Nap. 2052, 2053, 2058. If, therefore, the allegation in the answer is to be understood as an averment of the defendant that, at the time of executing the contract, he supposed he had a right to dissolve it upon paying the penalty, and if that averment must be taken as true, it is no ground, in equity, for refusing a specific performance of the agreement. "An agreement, if impeached, must be so at the time of its commencement; nothing subsequent can impeach it. 1 Atk. 104. A failure in a speculation forms no ground to resist a specific performance. Adams v. Weare, 1 Brown, Ch. 569." 1 Madd. 324, 408. "A court of equity will never decree iniquity, and there are instances where they have refused to decree hard bargains, though fair; but these are rare, and are generally cases of glaring hardship. For, in general, the court will never undertake to estimate the speculations of parties in a contract, but will deem them the best judges of their own views, and will compel a performance though they may be eventually disappointed in their expectations." Ward v. Webber, 1 Wash. (Va.) 274. The assignment of the Spanish fund to Mr. Woodside, for the use of Mrs. Cathcart, being voluntary, is void as to the plaintiff, who is a purchaser for valuable consideration, without notice. 1 Madd. Ch. Prac. 216, 271. "It is now fully settled, upon St. 27 Eliz. c. 4 (a statute passed to prevent frauds on purchasers,) that a voluntary settlement, however free from actual fraud, is, by operation of that statute, deemed fraudulent and void against a subsequent purchaser for valuable consideration, even where the purchase has been made with notice of the prior voluntary settlement. The statute receives the same construction, and produces the same effect, both in law and equity; and the purchaser of an equitable estate, for a valuable consideration, though with notice, is no more affected by a voluntary settlement, than the purchaser of a legal estate." Buckle v. Mitchell, 18 Ves. 110; Pulvertoft v. Pulvertoft, 18 Ves. 90; Metcalfe v. Pulvertoft, 1 Ves. & B. 183, 184; Otley v. Manning, 9 East, 59; Hill v. Bishop of Exeter, 2 Taunt. 69; Evelyn v. Templar, 2 Brown, Ch. 148; Senhouse v. Earle. 1 Amb. 288; 1 Eq. Cas. Abr. 334; Doe, Lessee of Parry, v. James, 16 East, 212; Townshend v. Windham, 2 Ves. Sr. 10. "Any conveyance, executed by a husband in favor of wife, or children, after marriage, which rests wholly on the moral duty of a husband and parent to provide for his wife and issue, is voluntary and void against purchasers, by force of the act." Sugd. Vend. 434. "A purchaser, without notice of a voluntary settlement, may compel a performance, in specie, of the agreement, although the settlement were made bona fide." Sudg. Vend. 439. "If a person, having a right to an estate, permit, or encourage a purchaser to buy it of another, the purchaser shall hold it against the person who has the right, although covert, or under age." Sugd. Vend. 480. "Service upon the husband alone is good service of the subpœna, where the husband and wife are co-defendants." Eden, Inj. 52. "If there are several defendants the court will not, in general, dissolve the injunction till all have answered." Eden, Inj. 89. Mr. Smith and Mrs. Cathcart, who are the principal defendants in regard to the Spanish fund, have not answered. Neither Mr. Cathcart, who has assigned all his interest in that fund to Mr. Woodside, nor Mr. Woodside, who has assigned all his and Mrs. Carthcart's interest in it to Mr. Smith, have any right to ask for a dissolution of the injunction. But if all the defendants had answered, and all the allegations, in the answers of Mr. Cathcart and Mr. Woodside, were to be taken as true, I should not think them sufficient to prevent a decree for a specific execution of the contract. Upon every ground, therefore, I think the injunction ought to be continued until final hearing.

At a subsequent term the question of dissolution was submitted by the parties to MORSELL, Circuit Judge, who, after examining the case, concurred with CRANCH, Chief Judge, and the injunction was continued till final hearing, THRUSTON, Circuit Judge, dissenting: and by consent of the parties the money was drawn from the treasury and invested in productive funds. [Case No. 11,947. The decree in that case was in part reversed by the supreme court, where it was carried on appeal. 5 Pet. (30 U. S.) 264.]