Gottschalk *vs.* Stein & Leopold.

(Filed 18th April, 1888.)

---

ALBERT GOTTSCHALK *vs.* MEYER STEIN and JOSEPH LEOPOLD.

*Contract for the Sale of Promissory notes—Specific performance—Injunction—Practice in Equity.*

Where the complainant is entitled to a specific performance of a contract for the sale of promissory notes, he is also entitled to an injunction to restrain the defendant from collecting the promissory notes which he agreed to sell.

Where there is an agreement to buy a specific chattel for a specific purpose, which can only be answered by the delivery of the chattel itself; or where from the nature of the subject-matter of the agreement, the measure of damages must necessarily be uncertain; or where damages will not be as beneficial to the purchaser as the performance of the contract, equity will interfere and decree the specific performance of the contract, because in such cases an action at law for a breach of the contract will not afford the purchaser a complete and adequate remedy.

Courts of equity will never interfere by way of injunction unless the complainant has made out a clear case; and if he has in his possession papers or instruments of writing on which his equity rests, such papers or instruments must be filed in support of his bill.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken by the defendant from an order granting a preliminary injunction. The case is stated in the opinion of the Court.

The cause was argued for the appellant before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J., and submitted for the appellees.

*Frank Gosnell,* for the appellant.

The injunction was not properly granted, because the object of the bill is to obtain specific performance of a contract for the sale and delivery of certain promissory notes, and the injunction is *ancillary* to that relief, so that unless the case presented by the bill authorizes the Court to *enforce the contract,* the injunction cannot be maintained. *Geiger vs. Green,* 4 *Gill,* 472; *Allen vs. Burke,* 2 *Md. Ch. Dec.,* 534; *Gelston vs. Sigmund,* 27 *Md.,* 343.

The contract should not be specifically enforced for the following reasons:

1. It is an attempt upon the part of the appellees (one of whom is the trustee) to get possession and control of the whole of the trust property and thereby perpetrate a fraud upon the creditors, which of itself shows an utter want of equity in the bill. *Turner vs. Bouchell,* 3 *Harr. & J.,* 106; *Williams vs. Marshall,* 4 *Gill & J.,* 376; *Hoffman Steamboat Co. vs. Cumberland Coal & Iron Co.,* 16 *Md.,* 456; *Cumberland Coal & Iron Co. vs. Sherman,* 20 *Md.,* 151; *Hubbard vs. Jarrell,* 23 *Md.,* 84; *Garey vs. Hignutt,* 32 *Md.,* 557; *Pairo vs. Vickery,* 37 *Md.,* 486; *Wilson vs. Maryland Life Insurance Co.,* 60 *Md.,* 154.

The fact that Stein was a joint purchaser with Leopold, the trustee, makes no difference. *Mitchum vs. Mitchum,* 3 *Dana,* 266.

2. The appellees have a full and adequate remedy at law, in which event they are not entitled to the extraordinary aid of a Court of equity, by way of injunction. *O'Brien vs. Pentz,* 4 *Md.,* 573; *Whalen vs. Dalashmutt,* 59 *Md.,* 253, 254.

They have a choice of remedies then, trover or replevin. *Penniman vs. Winner*, 54 *Md.*, 127; *Favery vs. Hays*, 20 *Iowa*, 27, 30.

The contract to sell and deliver the notes is equivalent to an endorsement in full of the notes in question, which would defeat any action that appellant might institute upon them. *Bowie vs. Duvall*, 1 *Gill & J.*, 180-1.

So, if it appears that the plaintiff has no beneficial interest in the suit, his action must fail, and this applies equally as well to the attitude of the appellees. *Seligman vs. Hoffacker*, 57 *Md.*, 325; *Munnikhuysen vs. Magraw*, 58 *Md.*, 562-3; *Sellman vs. Sellman*, 63 *Md.*, 522,

3. It is an effort to force upon the appellant a compromise of his claim at forty cents on the dollar, and without consideration, to accept less than he is entitled to, which is contrary to law and equity. *Ingersoll vs. Martin*, 58 *Md.*, 67, 74.

4. If the bill does not show grounds upon which the action at law may be sustained, and does not show a real necessity for coming into a Court of equity, the injunction should not have been granted. *Worthington vs. Lee*, 61 *Md.*, 530; *Grand Chute vs. Winegar*, 15 *Wall.*, 373.

In this case, the contract being between trustee and *cestui que trust*, so far as the appellees are concerned, an action thereon could only be maintained at law, if at all. *Williams vs. Marshall*, 4 *Gill & J.*, 376, 379, 380.

The injunction was not properly granted, because the necessary and proper exhibits do not accompany the bill. *Union Bank vs. Poultney*, 8 *Gill & J.*, 325; *Nusbaum vs. Stein*, 12 *Md.*, 315; *Mahaney vs. Lazier*, 16 *Md.*, 69; *Haight vs. Burr*, 19 *Md.*, 130; *Hankey vs. Abrahams*, 28 *Md.*, 588; *Shoemaker vs. National Mechanics Bank*, 31 *Md.*, 396; *Mayor, &c., of Baltimore vs.*

*Weatherby,* 52 *Md.,* 450; *Miller vs. Balto. Co. Marble Co.,* 52 *Md.,* 645.

There was absolutely no evidence before the Court that an action was pending between Gottschalk and the Weillers. The appellees filed what purports to be a copy of a declaration, *but there is no seal of the Court attached,* nor anything whatever to show that it was filed in any case, except appellees' affidavit, which is wholly insufficient. *Myers vs. Amey,* 21 *Md.,* 306; *Goldsmith vs. Kilbourn,* 46 *Md.,* 292. See also *Eyler & Matthews vs. Crabbs,* 2 *Md.,* 154; *Mayfield vs. Kilgour,* 31 *Md.,* 244.

*Isidor Rayner,* for the appellees.

ROBINSON, J., delivered the opinion of the Court.

The complainants, we all agree, are entitled to a specific performance of this contract, and this being so, they are entitled also to an injunction to restrain the defendant from collecting the promissory notes which he agreed to sell and transfer to them. Now what are the facts? The firm of Weiller & Son, composed of Hannah Weiller and her two sons, being in failing circumstances, made an assignment of all their property to Joseph Leopold, in trust for the benefit of their creditors. Afterwards, at a meeting of the creditors, held for the purpose of considering a compromise offered by the firm, Gottschalk, the appellant, who is the father-in-law of one of the members of the firm, with a view of inducing the creditors to accept the compromise, agreed that he and Stein, one of the appellees, who is the father-in-law of the other member of the firm, would endorse the settlement notes to be given to the creditors, in consideration of which, Leopold was to surrender his trust, and the property of the firm was to be transferred to them, as security on

account of their endorsement. On these terms, the creditors agreed to accept the compromise, and when it was about to be consummated, Gottschalk, without assigning any reason, refused to endorse the settlement notes, but proposed that they should be endorsed by Stein, and that the property of the firm should be transferred to him by way of indemnity. To this, Stein being anxious to effect the compromise, consented, and he accordingly assumed the liabilites of the firm, amounting to eighteen thousand dollars, a sum exceeding the value of the entire property of the firm. This being done, Leopold surrendered his trust, and the property was transferred to Stein. The firm, it seems, was also indebted to Gottschalk, on three promissory notes, amounting to $7500, but not supposing there would be any difficulty in effecting a satisfactory settlement with him, this indebtedness was not included in the compromise. Be this as it may, after sundry negotiations between the parties, Gottschalk by a contract in writing and under seal, agreed to sell and transfer these notes to Leopold and Stein, upon the payment by them of three thousand dollars.

The appellees were induced, the bill alleges, to buy these notes, solely for the benefit of Mrs. Weiller, a member of the firm, and who was nearly allied to the appellees by marriage, all of which was known to Gottschalk at the time the contract was made. This bill is filed by Leopold and Stein, to restrain Gottschalk, from collecting these notes, and also for the specific performance of the contract.

As a general rule, Courts of equity will not, it is true, decree the specific performance of a contract for the sale of goods and chattels, for the reason, that an action at law for a breach of the contract, affords as complete a remedy for the purchaser, as the delivery of the goods, inasmuch as with the damages thus recovered

at law, he can purchase the same quantity of like goods. Having thus an adequate remedy at law, there is no ground for the interference of a Court of equity. But we take it to be well settled, that where there is an agreement to buy a specific chattel for a specific purpose, and this purpose can only be answered by the delivery of the chattel itself; or where from the nature of the subject-matter of the agreement, the measure of damages must necessarily be uncertain; or where damages will not be as beneficial to the purchaser, as the performance of the contract, equity will interfere, and decree the specific performance of the contract, because in such cases, an action at law for a breach of the contract, will not afford the purchaser a complete and adequate remedy. In the language of Lord SELBORNE "the principle which is material to be considered, is that the Court gives specific performance instead of damages, only when it can by that means do more perfect and complete justice." *Wilson vs. Northampton, &c., Railroad Co., Law Rep.,* 9 *Ch. App.,* 279. Or in other words, where damages at law fall short of that redress to which one is fairly and justly entitled. *Doloret vs. Rothschild,* 1 *Sim. & Stu.,* 590; *Buxton vs. Lister,* 3 *Atk.,* 385; *White vs. Schuyler,* 1 *Abb. Pr. (N. S.),* 300; *Ashton vs. Corrigan. L. R.,* 13 *Eq.,* 76; *Robinson vs. Cathcart,* 2 *Cranch,* 590; *Cutting vs. Dana,* 25 *N. J. Eq.,* 265.

Now in this case, the appellant agreed to sell to the appellees the three promissory notes of Weiller & Son, and the appellees agreed to buy these notes for a specific purpose, which was known to the appellant. An action at law for a breach of the contract, would not, it is clear, give to the appellees the subject-matter of the contract. And besides, the damages to be recovered must necessarily be uncertain. The face value of the notes is seven thousand five hundred dollars, and the ap-

Gottschalk *vs.* Stein & Leopold.

pellant agreed to sell and transfer them to the appellees, upon the payment of three thousand dollars. If the firm of Weiller & Son was perfectly solvent, there would be no difficulty in determining the measure of damages. But the firm, the record shows, was insolvent, their assets being insufficient to pay their *debts.* And in an action at law the measure of damages would depend upon the personal ability of the members of the firm to pay the amount due on the notes, and this being uncertain, the damages to be recovered must also be uncertain. The legal remedy under such circumstances, would fall short of that redress to which the appellees are justly entitled, and is not, therefore, as beneficial to them as the specific performance of the contract.

There is no distinction, it seems to us, between this case and *Wright and others vs. Bell,* 5 *Price,* 325. There the assignees in bankruptcy, agreed to sell a debt of £550 due the bankrupt for £500, and the defendant having refused to pay the £500, a bill was filed for the specific performance of the contract, and it was argued that the remedy of the plaintiff was by an action at law for a breach of the contract. But the Lord Chief Baron held, that although equity would not, as a general rule, enforce the performance of contracts, for the sale of chattels, yet a contract to sell a specific debt, was an exception to the rule. And then again in *Adderley vs. Dixon,* 1 *Sim. & Stu.,* 607, where the plaintiff being entitled to a dividend in two bankrupt estates, agreed to sell the claims for 2s. and 6d. in the pound, Sir John Leach, Vice-Chancellor, said:

"Courts of equity decree the specific performance of contracts, not upon any distinction between realty and personalty, but because damages at law may not, in the particular case, afford a complete remedy. The present case being a contract for the sale of the uncertain dividends which may become payable from the estates

of the two bankrupts, it appears to me that, upon the principle established by the cases of *Ball vs. Coggs,* 1 *Bro. P. C.,* 140, and *Taylor vs. Neville,* (*cited in* 3 *Atk.,* 384,) a Court of equity will decree specific performance, because damages at law cannot accurately represent the value of the future dividends; and to compel this purchaser to take such damages, would be to compel him to sell these dividends at a conjectural price." So in this case, the damages at law being uncertain on account of the failure of Weiller & Son, the appellees are entitled to the specific performance of the contract.

And then as to the suggestion that equity will not lend its aid to a trustee in the purchase by him of claims against the trust estate, it is sufficient to say that Leopold had surrendered his trust, and had, in fact, no connection with the trust estate at the time the contract was made.

In regard to the third and last objection, namely that the necessary exhibits are not filed in support of the bill, we have but a word to say. Courts of equity never interfere by way of injunction, unless the complainant has made out a clear case, and if he has in his possession papers or instruments of writing on which his *equity rests,* such papers or instruments must be filed in support of his bill. This is necessary in order that the Court may see that he is entitled to the relief prayed. *Hankey vs. Abrahams,* 28 *Md.,* 588; *Shoemaker vs. National Mechanics Bank of Baltimore,* 31 *Md.,* 396.

In this case, the contract for the sale of the notes, is the ground on which the equity of the appellees *rests,* and this contract is filed in support of the averments of the bill. Besides this, they also file a copy of the proceedings in the suit brought by Gottschalk on the promissory notes, attested by the clerk, but not authenticated by the seal of the Court. Whether this exhibit ought to have been authenticated by the seal

of the Court, is a question not necessary to be decided in this case, because it is not an exhibit on which the equity of the bill is based. Speaking for myself, I have no hesitation in saying that the Code only requires the proceedings of a Court to be authenticated by the seal of the Court, when such proceedings are offered as evidence in a cause. Code, Art. 37, sec. 58. For these reasons the order of the Court below will be affirmed.

(Decided 18th April, 1888.)